**Jesus GUTIERREZ, Petitioner,**

v.

**David N. ILCHERT, District Director, Immigration and Naturalization Service, Respondent.**

**No. C–88–0585 EFL.**

United States District Court, N.D. California.

March 28, 1988.

As Amended May 2, 1988.

Walter Rafael Pineda, San Francisco, Cal., for petitioner.

George C. Stoll, Asst. U.S. Atty., San Francisco, Cal., for respondent.

## MEMORANDUM DECISION

LYNCH, District Judge.

Petitioner Gutierrez brings this action for a writ of habeas corpus seeking review of respondent District Director's decision to deny petitioner parole pending exclusion and deportation proceedings. For the reasons explained below, the Court grants the petition, subject to reconsideration by the District Director within two weeks of the date of this order.

### FACTS

The facts, for the most part, are not in dispute. Petitioner entered the United States from Mexico, without inspection, in November 1978. Since his entry, he has been gainfully employed, developed a long-term relationship with a woman who is a lawful resident alien, and fathered two children who hold United States citizenship. He has provided support for his family and never been arrested.

In early May 1987, petitioner departed the United States in order to visit his seriously ill mother. Approximately three weeks later, he attempted to reenter the United States using a counterfeit alien registration receipt card ("green card"). Immigration officials apprehended him and initiated exclusion proceedings. Pending the outcome of those proceedings, petitioner was retained in custody.

Two days after his apprehension, petitioner appeared before an Immigration Judge ("IJ") in exclusion proceedings. The IJ granted petitioner's request to withdraw his admission application. The Immigration and Naturalization Service ("INS") appealed the IJ's ruling to the Board of Immigration Appeals ("BIA"). During the pendency of this appeal, for a period of approximately seven months, petitioner remained in custody.

On June 17, 1987, the District Director denied petitioner's first request for parole. In a six-page letter to petitioner's attorney, the District Director explained his decision. He noted that under the governing statutes parole was to be the exception rather than

the rule, and that it should be granted only for "emergent reasons" or when it is "strictly in the public interest." After citing the INS regulations setting forth the criteria to be considered in making parole decisions, the District Director stated that petitioner's request "does not address these regulatory criteria." He found the petitioner's allegations that his family desperately needed his financial and emotional support to be "insufficient to establish 'emergent reasons' or 'strictly in the public interest.'" Instead, the District Director found that the public interest lay in "discouraging attempts such as applicant's to contravene the immigration laws."

In response to petitioner's suggestion that he might be eligible for amnesty under the recently enacted Immigration Reform and Control Act ("IRCA"), Pub.L. No. 99–603, the District Director stated that petitioner was "plainly ineligible for legalization." According to the District Director, petitioner was ineligible because his absence was not "brief, casual and innocent," as that term is used in IRCA, and therefore he did not meet the continuous presence requirement for amnesty. To reach this conclusion, the District Director relied on newly promulgated INS regulations providing that "brief, casual and innocent" absence occurs only in two circumstances: when the INS authorizes the departure in advance and when the departure is "beyond the alien's control," i.e., "wholly involuntary."

In August 1987 petitioner applied for legalization pursuant to the amnesty provisions of IRCA. In response to petitioner's application, the INS Regional Processing Center notified petitioner that he was to appear for an interview with a legalization officer on September 3, 1987.

Through his attorney, petitioner informed the District Director of his upcoming appearance and again requested parole. Again the District Director denied the request, reiterating that petitioner was "clearly ineligible" for amnesty.

When petitioner failed to appear at his scheduled interview, the Regional Processing Center provided another date and advised petitioner that failure to appear would result in the denial of his application. Petitioner again requested parole and again the District Director denied the request, this time informing petitioner that he, the District Director, had recommended to the Regional Processing Center that petitioner's application be denied.

Subsequent parole requests have also been denied, although the District Director has proposed that petitioner appear for an interview at the District Director's office. Petitioner has requested clarification regarding this proposal, but the matter has not yet been resolved.

On December 28, 1987, the BIA reversed the IJ's decision and remanded the case for a decision on the issues of excludability and deportability. In compliance with the BIA's instructions, the IJ ordered petitioner excluded and deported on February 10, 1988. The IJ also denied petitioner's motion to terminate exclusion proceedings. Petitioner appealed the IJ's decision, and that appeal is presently pending. Petitioner has now been in custody over nine months.

## DISCUSSION

### I. Jurisdiction

Petitioner seeks review by way of the general habeas corpus statute, 28 U.S.C. § 2241 ("section 2241"). This presents two jurisdictional problems. First, review under section 2241 normally requires exhaustion of administrative remedies. Second, the immigration statutes include a specific provision restricting habeas review of INS parole decisions. 8 U.S.C. § 1252(a).

### A. *Exhaustion of Administrative Remedies*

As noted above, a party seeking review under section 2241 must normally first exhaust administrative remedies. The exhaustion requirement applies to parole decisions in the *non* immigration prisoner setting. *See, e.g., Green v. Christiansen*, 732 F.2d 1397, 1400 (9th Cir.1984). Moreover, although the statute governing habeas review of deportation and exclusion orders

apparently does not directly apply to this request for review of a parole decision, it too requires exhaustion of administrative remedies. *See* 8 U.S.C. § 1105a(c). However, petitioner does not allege exhaustion of remedies, and in view of his pending appeal, it is not clear if he can.

Petitioner cites a Second Circuit decision for the proposition that review of immigration parole decisions is appropriate here under section 2241. *See Bertrand v. Sava,* 684 F.2d 204 (2d Cir.1982). Petitioner is correct that the *Bertrand* court permitted section 2241 review of an INS decision to deny parole under circumstances indicating that the petitioners had not exhausted their administrative remedies. *Bertrand*'s significance on this issue, however, is unclear. The court was responding to an argument that federal courts are *"wholly* without power" to review parole decisions and explicitly considered neither the issue of exhaustion nor the existence of the more specific habeas statute. 684 F.2d at 210 (emphasis added).

Although this Court is not convinced that *Bertrand* stands for the proposition that exhaustion of administrative remedies is not required for review under section 2241 in the present circumstances, it concludes that failure to exhaust does not bar review here for the simple reason that respondent District Director has removed it as an issue. In response to this Court's request for a supplemental brief on this question, the District Director alleges that, while petitioner has yet to exhaust on the issues of exclusion and deportation, he *has* exhausted his remedies with respect to the parole decision. Presumably, this means that the parole issue is not before the BIA. Consequently, this Court need not decide whether an exhaustion requirement applies under these circumstances, since any such requirement has evidently been met.

#### B. *The Immigration Parole Habeas Statute*

■ Title 8 U.S.C., § 1252(a) ("section 1252(a)") provides that federal courts shall have authority to review immigration parole decisions pending the outcome of deportability proceedings "upon a conclusive showing in habeas corpus proceedings" that the INS is not acting with "reasonable dispatch" under the circumstances. In connection with this statute, the Seventh Circuit has held that "once deportation proceedings have begun the legality of the alien's detention can no longer be tested by way of a habeas corpus proceeding," provided that the proceedings begin with reasonable promptness. *Arias v. Rogers,* 676 F.2d 1139, 1143–44 (7th Cir.1982). Similarly, a recent decision by a district court in the Second Circuit has held, *Bertrand* notwithstanding, that section 1252(a) demonstrates that Congress "did not intend a dual procedure for persons subject to deportation" and therefore review pursuant to section 2241 generally is not available when section 1252(a) applies. *See Massoumi–Demaghi v. Weiss,* 631 F.Supp. 1525, 1527 (D.Conn.1986).

Under these decisions, the existence of jurisdiction on the present facts is questionable. If *Weiss* is correct, petitioner may not proceed under section 2241; he may obtain review only under section 1252(a). While perhaps section 1252(a) does not preempt section 2241 in every instance where section 1252(a) applies, this Court agrees with *Weiss* that Congress did not intend a "dual procedure" for the review of INS decisions. To allow review under section 2241 without regard to the applicability of section 1252(a) would effectively eliminate the requirement that a party seeking review of a parole decision show that the INS is not moving with "reasonable dispatch." Accordingly, since petitioner has advanced no reason why he should not be subject to the limitation contained in section 1252(a), this Court concludes that section 2241 is not available to petitioner as a vehicle for review of the District Director's decision to deny review.

Of course, this conclusion does not necessarily preclude review. The next step is to determine whether petitioner has met his burden of showing that the INS has not proceeded with "reasonable dispatch." One view, arguably expressed in *Arias,* might be that petitioner can never make this showing once deportation proceedings

have begun. This Court declines to follow such an approach, since the statute appears to contemplate the circumstance in which the INS has initiated the deportation process, but drags its feet in moving it along.

■ However, while petitioner is not completely barred from making the necessary showing, his efforts in this regard are marginal, since he evidently assumed he could bypass the problem by relying on section 2241. Those efforts consist largely of the allegation that the initial administrative appeal took seven months, and the second appeal has been pending for over a month. Normally, this Court would be disinclined to find this sufficient. Counsel for the District Director, however, asserts, despite this Court's expressed reservations and request for supplemental briefing, that the Court has jurisdiction to review the parole decision. In effect, then, respondent District Director concedes that the INS has not been proceeding with reasonable dispatch under the circumstances. Accordingly, the Court concludes that it has jurisdiction to review the parole decision pursuant to section 1252(a).

## II. Standard of Review

The District Director contends that parole decisions are entitled to extreme deference and that, as a result, this Court may not even review the decision for an abuse of discretion. Instead, he argues, the Court must affirm the decision if it rests on a "facially legitimate and bona fide reason." *See Amanullah v. Nelson*, 811 F.2d 1, 10 (1st Cir.1987).

While some circuits have adopted this standard, others retain the abuse of discretion test. *See, e.g., Moret v. Karn*, 746 F.2d 989 (3d Cir.1984). At present, the Ninth Circuit has not spoken on this issue. This Court need not choose between the two, however, since the result here is the same under either standard. Even under the "facially legitimate" test, the District Director's denial of parole cannot be sustained.

## III. The Merits

Under 8 U.S.C. § 1182(d)(5), the INS, exercising the authority of the Attorney General, may parole an alien for "emergent reasons or reasons strictly in the public interest." Pursuant to its authority to implement this statute, the INS has promulgated regulations to guide the District Director in making parole determinations. In particular, the regulations provide that certain groups of aliens "generally come within the category of aliens for whom the granting of the parole exception would be 'strictly in the public interest', provided that the aliens present neither a security risk nor a risk of absconding." *See* 8 C.F.R. § 212.5.

### A. *Administrative Proceeding Witnesses*

■ Among the categories of aliens designated as normally qualifying for parole are "[a]liens who will be witnesses in proceedings being, or to be, conducted by judicial, administrative or legislative bodies in the United States." *Id.* Since petitioner was scheduled to appear before an INS legalization officer regarding his amnesty application, he was arguably a prospective witness at an administrative proceeding.

In explaining his decisions to deny parole, the District Director completely ignored the possibility that petitioner might be eligible for parole under this provision. Perhaps this provision was not intended to cover legalization interviews. But on its face, it seems to apply, and the District Director did not explain why it does not.

At oral argument, counsel for the District Director offered a possible explanation for the decision. She presented the Court with a recently promulgated amendment to the parole regulations. The amendment provides that parole shall be denied to an alien "who arrives at a port of entry and applies for parole ... for the sole purpose of seeking" legalization under IRCA. Amendment 15, 52 Fed.Reg. 16,194 (1987) (to be codified at 8 C.F.R. § 212.5(b)). It further provides that an alien granted parole "for other than the specific purpose of applying for" legalization "shall not be

permitted to avail him or herself [sic] of the privilege" of legalization under IRCA. *Id.* (to be codified at 8 C.F.R. § 212.5(d)(2)(ii)).

For at least two reasons, these regulations do not provide the requisite facially legitimate reason for the denial of parole. First, the District Director did not so much as mention them in any of his letters explaining his decisions, let alone rely on them. Rather, he repeatedly emphasized petitioner's ineligibility for legalization.

Second, and perhaps this is the reason the District Director did not rely on the amended regulations, the applicability of these rules to petitioner is dubious. The initial language of the subsection amended by the provision denying parole to amnesty applicants refers only to categories of aliens to which petitioner does not belong. *See Id.* § 212.5(b). Presumably, the amendment also applies only to such aliens. Additionally, petitioner did not arrive here and request parole "for the sole purpose of seeking" amnesty. The evidence before the Court indicates that his long-standing residence and family ties here almost certainly were his primary motivations.

Similarly, the scope of the amendment denying the amnesty privilege to aliens granted parole "for other than the specific purpose" of seeking amnesty shall "not be permitted to avail him or herself" of this privilege is also ambiguous. Does this apply only if the alien initiates his amnesty request after parole? Does it apply if the alien is paroled for a combination of reasons, including his potential eligibility for legalization? Depending on how these questions are answered, this provision may not govern petitioner.

Because the District Director has not purported to apply these amended rules to petitioner, and because their applicability is in doubt, they cannot justify the decision to deny parole. In addition, the Court notes that the statutory origin of these amendments is suspect. A review of the statutes cited in the Federal Register as authority for these amendments reveals no obvious statutory basis for the changes. Indeed, they seem inconsistent with Congress' intention that the amnesty provisions of

IRCA be applied liberally and generously. H.R.Rep. No. 682(I), 99th Cong., 2d Sess. 72, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5649, 5676. Although this Court need not determine whether these rules square with the statutory framework, their arguable infirmity supplies yet another reason why they do not support the District Director's decision here.

In short, the District Director denied parole in the face of a specific regulation suggesting a contrary result. His failure to acknowledge this regulation cannot be cured by post hoc citation of other regulations of arguable applicability and dubious validity.

### B. *Eligibility for IRCA Legalization*

As noted above Congress included in IRCA provisions that offer "amnesty" to certain aliens residing unlawfully in the United States. *See* 8 U.S.C. § 1255a. Through this program, an alien may apply for "adjustment" of his immigration "status." If eligible, the applicant's status will be changed from unlawful to lawful.

In order to be eligible, an alien must have continuously resided in the United States since January 1, 1982. 8 U.S.C. § 1255a(a)(2). In addition, the statute requires continuous physical presence in the United States since November 6, 1986. 8 U.S.C. § 1255a(a)(3)(A). A "brief, casual and innocent" absence, however, will not interrupt continuous physical presence for purposes of eligibility. 8 U.S.C. § 1255a(a)(3)(B).

The primary dispute in this case is whether petitioner is eligible for amnesty under IRCA. Although the District Director contests this Court's authority to consider this issue in reviewing the denial of parole, he devotes the bulk of his argument to refuting petitioner's eligibility. Further, his decision rested explicitly, at least in part, on his finding that petitioner was "plainly ineligible" for legalization. Accordingly, this Court will now turn to that issue.

### 1. *Relevance to Parole Decisions*

As noted above, the governing statute authorizes parole when it would be "strictly in the public interest." In addition, the implementing regulations include on the list of aliens normally eligible for parole a catch-all category of all those "whose continued detention is not in the public interest as determined by the district director." 8 C.F.R. § 212.5(a)(2)(v).

In view of this "public interest" standard, Congress' expressed intent that certain aliens residing unlawfully in the United States be offered lawful status suggests that the potential eligibility of aliens detained by the INS should be considered in determining whether to grant parole. If an alien is eligible for IRCA legalization, he is a member of a group that Congress has singled out for special, and favorable, immigration treatment. Thus the "public interest" would seem to favor the parole of such aliens. Therefore, to the extent it is likely a detained alien is eligible, his argument for parole is strengthened.

In this respect, the status of eligible aliens is arguably similar to that of the group considered in *Fernandez–Roque v. Smith*, 622 F.Supp. 887 (N.D.Ga.1985), *rev'd sub nom. Garcia–Mir v. Meese*, 788 F.2d 1446 (11th Cir.1986).[1] There the court considered the proper standard for determining whether to parole Cubans "invited" to the United States by the President through a series of formal and informal public statements encouraging them to immigrate to this country and promising their assimilation into the population. The court found that their special status gave qualified Cuban aliens a protectible liberty interest:

> [T]he only reasonable interpretation of the invitation is that it is the expression of an executive policy and practice to afford plaintiffs some greater status than that afforded ordinary excludable aliens, over whose liberty the Attorney General has "remarkably broad" discretion. By elevating these plaintiffs' legal status over that of ordinary excludable aliens, the invitation limited the Attorney General's discretion over their parole.

*Id.* at 900. The court then concluded that those aliens included in the "invited" group could be detained only if they were "likely to abscond, to pose a risk to the national security, or to pose a serious and significant threat to persons or property within the United States." *Id.* at 901.

 While this Court is not willing to go so far as the *Fernandez–Roque* court in affording special protection to aliens eligible for amnesty, it does agree that an official expression of policy favoring a particular group of otherwise excludable or deportable aliens enhances the "public interest" in granting parole. Accordingly, the status of a detained alien with respect to IRCA legalization is a matter that the District Director can and should consider.

### 2. *Petitioner's Eligibility for IRCA Amnesty*

██ Based on the facts provided to the Court, petitioner's eligibility for legalization under IRCA almost certainly stands or falls on whether his three-week departure to visit his ill mother was a "brief, casual and innocent absence." As already indicated, the statute provides that such an absence does not interrupt an applicant's "continuous physical presence" and thereby disqualify him for legalization under IRCA.

The District Director's conclusion that petitioner was "plainly ineligible" evidently stemmed from INS regulations interpreting the "brief, casual and innocent" language in the statute. Under these regulations, an absence qualifies only if it does not exceed 30 days and the INS authorized it in advance or the departure was "beyond the alien's control." 8 C.F.R. § 245a.1(g).

This interpretation of "brief, casual and innocent" is truly remarkable in the violence it does to the spirit and purpose of the Act it purports to implement. The legislative history of IRCA reflects a congressional intent that the amnesty provisions be broadly applied, not construed in the narrowest manner consistent with the literal language of the statute. "[T]he legalization program should be implemented in a liberal and generous fashion...." H.R. Rep. No. 682(I), 99th Cong, 2d Sess. 72,

---

1. While the Eleventh Circuit reversed *Fernandez–Roque* in *Garcia–Mir*, the court noted that the case might be different where, as here, Congress has adopted legislation giving the group of aliens under consideration special and favorable immigration status. 788 F.2d at 1451 n. 5. In any event, this Court does not cite *Fernandez–Roque* for the proposition that aliens eligible for amnesty possess a constitutional liberty interest by virtue of that eligibility, but only to illustrate the principle that the policy underlying the IRCA amnesty program bears on whether the parole of an eligible alien is in the "public interest."

reprinted in 1986 U.S.Code Cong. & Admin.News 5649, 5676.

But the regulation is not invalid only because it narrowly reads a statute that Congress clearly intended should be interpreted liberally. In addition, it effectively reads any meaning out of the "brief, casual and innocent" provision. By its explicit terms, IRCA offers legalization only to those whose residence in this country has been continuously unlawful. 8 U.S.C. § 1255a(a). In short, it seeks to benefit only those who have been hiding from the authorities during their entire stay here. Surely Congress did not intend, and the INS cannot seriously expect, that aliens living here illegally will seek permission to leave the country from the very people they have been hiding from for years. This half of the INS view of "brief, casual and innocent" goes beyond a narrow reading; it is almost overtly hostile to the legalization program itself.

The part of the regulation that otherwise limits absences to those "beyond the alien's control" is equally inconsistent with IRCA. The District Director, in denying petitioner's parole request, interpreted this to allow only departures that are "wholly involuntary." In other words, the applicant's absence qualifies only if he was carried unconscious across the border or transported there in some other manner against his will. Again, under this half of the INS view of "brief, casual and innocent" virtually all departures would render otherwise eligible applicants ineligible.

There is a further reason why the regulation is invalid: it is inconsistent with case law applying the brief, casual and innocent principle. While IRCA is too new for courts to have interpreted the provision at issue, IRCA borrowed the language and the principle from case law developed under, and later incorporated into, the deportation suspension statute. See I.N.S. v. Phinpathya, 464 U.S. 183, 104 S.Ct. 584, 591, 78 L.Ed.2d 401 (1984) (eliminating court-made "brief, casual and innocent" exception to continuous presence requirement in deportation suspension statute; later statutorily overruled by amendment to 8

U.S.C. § 1254). Under the pre-Phinpathya cases, brief, casual and innocent absences were not limited to authorized and involuntary departures. The principle was applied in precisely the circumstances one would expect: where the alien leaves the country for a short time with every intention of returning. See, e.g., de Gallardo v. I.N.S., 624 F.2d 85 (9th Cir.1980); Git Foo Wong v. I.N.S., 358 F.2d 151 (9th Cir.1966); Wadman v. I.N.S., 329 F.2d 812 (9th Cir.1964). The courts focused not on the nature of the departure, but on whether the absence was "meaningfully interruptive" of the alien's continuous physical presence. See, e.g., Wadman, 329 F.2d at 816.

The District Director argues that petitioner's departure cannot be deemed "innocent" since he procured a fraudulent green card in order to effect his return to the United States. In support, he cites Miramontes v. I.N.S., 643 F.2d 573 (9th Cir. 1980). It is true that Miramontes declined to find the alien's absence sufficiently innocent to allow him to avoid deportation. However, the facts of the case are unclear, since the court merely noted what the IJ did not believe. In explaining its conclusion, the Ninth Circuit stated that "if the purpose of the trip was to achieve an object contrary to the policies reflected in our immigration laws then the absence would appear 'meaningful.'" Id. at 574. The court then cited two cases in which the aliens detained were apprehended while smuggling other aliens or drugs into the United States. Id. at 574. (citing Palatian v. I.N.S., 502 F.2d 1091 (9th Cir.1974); Cuevas–Cuevas v. I.N.S., 523 F.2d 883 (9th Cir.1975)).

Miramontes and the cases it relies on do not support the District Director's argument. Those cases found a meaningful interruption of continuous physical presence when the purpose of the trip was contravention of the immigration laws. Here, the purpose of the trip was the most innocent imaginable: petitioner went to the bedside of his ailing mother.

Other Ninth Circuit decisions leave no doubt that the District Director's position is not the law. For example, in de Gallardo,

624 F.2d 85, the court held that the petitioner, who had lived in the United States for ten years and left the country on a three and one-half month vacation, did not interrupt her continuous physical presence here by virtue of reentering the country illegally and in a manner strikingly similar to that of petitioner in this case:

> On returning to the United States from her vacation, [petitioner] obtained a permit to reenter this land on the pretext that she intended to stay only a few days. *This circumstance should not, by itself, break the continuity of her presence for purposes of eligibility under 1254(a)(1). This court has recognized that not every violation of law taints an otherwise innocent trip abroad.* The suspension of deportation provisions were designed by Congress to give the Attorney General discretion with respect to illegal as well as legal aliens. Moreover, this court has cautioned that the suspension of deportation provisions are remedial and are to be generously construed to relieve aliens of harsh consequences, of unexpected risks, and of unintended consequences flowing from a rigid application the provisions of § 1254(a)(1).

*Id.* at 87 (emphasis added).

*De Gallardo* clearly renders the District Director's argument meritless. Petitioner's case presents even stronger reasons for concluding that his attempt to enter the country illegally does not destroy the continuity of his presence. Like the statute in *de Gallardo*, IRCA is remedial and intended to be construed generously. In addition, however, IRCA's amnesty provisions are targeted specifically and exclusively at illegal aliens. Moreover, by including the brief, casual and innocent exception in the statute, Congress obviously sought to incorporate the law developed in cases such as *de Gallardo*.

In summary, the INS regulation implementing the brief, casual and innocent exception to the continuous physical presence requirement is nothing less than an emasculation of that provision. As such, it is invalid and cannot support the District Director's decision to deny parole.

## CONCLUSION

Despite some reservations, this Court concludes that it has jurisdiction to consider the limited issue of whether respondent District Director properly denied petitioner's request for parole into the United States. Since that denial rested largely on invalid regulations, it is not supported by a "facially legitimate and bona fide reason" and constitutes an abuse of discretion.

It is possible, though by all appearances unlikely, that other grounds exist for the denial of parole. Accordingly, the matter is remanded to the District Director for reconsideration in a manner consistent with this opinion. If a parole decision is not issued within fourteen days of this order, the writ of habeas corpus shall issue and petitioner must be released from custody on parole into the United States.

IT IS SO ORDERED.