**PROYECTO SAN PABLO, Labor Immigrant Assistance Project, John A, John F, John T, Jane S, John M, Jane T, John G, and Jane B, individually and on behalf of others similarly situated, Plaintiffs,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Richard Thornburgh, Attorney General, James Buck, Acting Commissioner, Immigration and Naturalization Service, Dennis Keefe, Director, Legalization Appeals Unit, Department of State, Defendants.**

No. CIV 89–456–TUC–WDB.

United States District Court,
D. Arizona.

Aug. 21, 1991.

Judgment Dec. 19, 1991.

Anne F. Ward, Southern Arizona Legal Aid, Inc., Tucson, Ariz., Robert Pauw, Northwest Immigrant Legal Services, Robert Gibbs, Seattle, Wash., for plaintiffs.

Ellen Sue Shapiro, Atty., Office of Immigration Litigation, Civil Div., Dept. of Justice, Washington, D.C., Stephen M. McNamee, U.S. Atty., D. Ariz., Don Overall, Asst. U.S. Atty., D. Arizona, Tucson, Ariz., for defendants.

## ORDER

WILLIAM D. BROWNING, Chief Judge.

Pending before the Court are Cross–Motions for Summary Judgment. Plaintiffs filed their Motion for Partial Summary Judgment on November 14, 1990. Defendants filed their Cross–Motion for Summary Judgment on May 17, 1991. A hearing on both Motions was held on July 12, 1991.

## OPINION AND ORDER

### A. *Jurisdictional Basis*

Recently, the United States Supreme Court held that district courts have federal question jurisdiction to hear statutory and constitutional challenges to Immigration and Naturalization Service ("INS") procedures. *McNary v. Haitian Refugee Center, Inc.*, —— U.S. ——, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991). The Court, therefore, has jurisdiction over this matter.

### B. *The Class*

In its July 20, 1990 Order, the Court certified the following class:

> [T]hose aliens who, at an INS legalization office located within the INS Western and Northern Regions of the United States, made application for change of status under the IRCA; to whose application 8 C.F.R. § 245a.1 was applied; and whose application was denied.

July 20, 1990, at 13.

In its December 11, 1990 Order, the Court denied plaintiffs' Motion for Certification of a Second Class. It also denied plaintiffs' Motion to Amend Class Certification, except to substitute the statutory for the regulatory citation. Now, the class is defined as those same applicants "to whose application 8 U.S.C. § 1255a(g)(2)(B)(i) was applied; and whose application was denied." December 11, 1990 Order, at 6.

### C. *The Claims*

In their Complaint, plaintiffs brought eight claims. In their Motion for Partial Summary Judgment now before the Court, plaintiffs seek summary judgment as to the first *seven* claims. The Court will summarize those claims.

#### 1. Claims Four and Seven

The INS acts unlawfully by denying legalization to individuals who were deported in violation of law. Many legalization applicants have been deported from the United States despite a legal right to remain here. Some persons have been deported after the Immigration Reform and Control Act of 1986 ("IRCA") (amending the Immigration and Nationality Act ("INA")) was enacted. According to plaintiffs, IRCA requires the INS to refrain from deporting

individuals eligible for legalization. Deportations have occurred in violation of the governing statute and in violation of the due process and equal protection clauses of the Constitution. Even though these deportations are unlawful, the INS has implemented a policy that refuses to permit collateral attacks on deportations. In so doing, the INS deprives these persons of legalization on the basis of unlawful deportations.

### 2. Claim One

The INS acts unlawfully by denying legalization to individuals whose departure from the United States was not caused by, under, or based on an "order of deportation." According to IRCA, an individual may be disqualified from legalization if absent from the United States after 1981 "as a result of a departure under an order of deportation," *i.e.*, an absence that was caused by an order of deportation. However, the INS routinely denies legalization to individuals even though the absence was not caused by an order of deportation. The INS promulgated a regulation to define a departure caused by an order of deportation. This regulation disqualifies any applicant whose absence was *"based on* an order of deportation."

The language of the regulation is inconsistent with IRCA and the INA. Rather than defining what constitutes an absence caused by an order of deportation, the regulation substitutes broader, more vague language than that contained in IRCA.

Additionally, the INS ignores the statute and the regulation. The INS routinely determines that applicants who briefly depart from the United States for reasons entirely unrelated to deportation proceedings, or applicants who briefly depart at any time after an order of deportation is entered, even if the order is never executed, are ineligible for legalization. The INS denies applications without considering whether the absence was caused by, under, or based on an order of deportation.

Moreover, some legalization applicants have been *excluded from entry* into the United States rather than deported. Even though these individuals have never been deported from the United States, the INS nevertheless denies their legalization applications by treating the exclusion as a deportation.

### 3. Claims Three and Six

The INS acts unlawfully by refusing to accept IRCA waivers for prior deportations. IRCA contains a provision that allows applicants to ameliorate the effect of prior deportations. Even though Congress created this waiver to benefit individuals who were previously deported, the INS has refused to accept IRCA waivers from applicants with post–1981 deportations who seek to ameliorate the effect of such deportations *nunc pro tunc.*

### 4. Claims Two and Five

The INA contains another provision for waiving deportations *nunc pro tunc.* This provision is implemented by a regulation. Although IRCA is a part of the INA and the regulation pertains to IRCA as well as to the remainder of the INA, the INS has refused to accept these INA waivers from applicants with post–1981 deportations who seek to ameliorate the effect of such deportations *nunc pro tunc.*

### D. *Relief Sought*

Plaintiffs maintain that the INS, by adopting the policies and procedures described *supra*, has implemented the legalization program in a manner that is inconsistent with IRCA and the Constitution. Plaintiffs request that the Court grant summary judgment as to the first seven claims, declaring the challenged regulation, interpretation, policies, and procedures invalid; provide a stay of deportation and extend work authorization to class members who previously have been denied legalization status; and require the INS to reopen and readjudicate applications that have been improperly denied. Plaintiffs' November 14, 1990 Memorandum in Support of Motion for Partial Summary Judgment ("Plaintiffs' Memorandum"), at 6.

E. *Standards for Summary Judgment*

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ The initial burden rests on the moving party to point out the absence of any genuine issue of material fact. Once satisfied, the burden shifts to the opponent to demonstrate through production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ A party opposing summary judgment may not rest on its pleadings. Fed.R.Civ.P. 56(e). Although reference is made to the movant's "burden," Rule 56 places no evidentiary burden on the moving party beyond that which is required to prevail at trial. Therefore, while it is incumbent upon the adverse party to offer evidence sufficient to raise a genuine issue of fact on an issue on which that party has the burden of proof, the moving party need provide nothing more than a reference to those materials on file in the case which support the movant's belief that there is an absence of any genuine issue of material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir.1990).

■ When judging the evidence at the summary judgment stage, a district court is not to make credibility determinations or weigh conflicting evidence, and is required to view all inferences in the light most favorable to the non-moving party. *Id.*

■ Summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (quoting *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552).

■ The ultimate question is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The mere existence of a scintilla of evidence supporting the non-movant's position will be insufficient; there must be evidence from which the jury could reasonably find for the non-movant. *Id.* at 252, 106 S.Ct. at 2512.

■ Finally, if the factual context makes the non-movant's claim implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Previously, the Court recognized that this case is not fact-driven. In its July 20, 1990 Order, the Court held that:

> [It] has not been asked to, nor will it, consider specific acts ... [against] ... individual plaintiffs. Rather, the Court will consider specific acts of the ... [INS]: the promulgation of regulations and policies and their subsequent implementation.

July 20, 1990 Order, at 12.

In the Motions now before it, the Court faces only questions of law. The case, therefore, is ripe for summary judgment.

F. *Continuous Unlawful Residence Claims*

1. Plaintiffs' arguments

Under IRCA, an alien's status shall be adjusted to that of an alien lawfully admitted for temporary residence if the alien meets four requirements. 8 U.S.C. § 1255a(a)(1)–(4) (Supp.1991). The requirements are that the alien: (1) file a timely application; (2) establish continuous unlawful residence since January 1, 1982; (3) establish continuous physical presence since November 6, 1986; and (4) be admissible as an immigrant.

At issue in this lawsuit is the meaning of the 8 U.S.C. § 1255a(a)(2) requirement of "continuous unlawful residence." The statute defines the term as follows:

The Attorney General shall provide that—

(i) an alien shall not be considered to have resided continuously in the United States, if, during any period for which continuous residence is required, *the alien was outside the United States as a result of a departure under an order of deportation ....*

8 U.S.C. § 1255a(g)(2)(B)(i) (Supp.1991) (emphasis added). The heading of this section reads *"[a]bsences caused by deportation* or advanced parole" (emphasis added). Plaintiffs allege that the INS has interpreted this IRCA provision in an unlawful and unconstitutional manner.

The regulation promulgated by the INS to define "resided continuously" as that term is used in section 1255a(a)(2) provides that an alien shall be regarded as having resided continuously if, *inter alia,* "[t]he alien's departure from the United States was not *based on an order of deportation."* 8 C.F.R. § 245a.1(c)(1)(iii) (1991) (emphasis added). Plaintiffs contend that this regulation "substitutes broader, more vague language than that contained in the statute." Plaintiffs' Memorandum, at 4.

Plaintiffs allege that in issuing denials, the INS never determines whether an alien's absence from the country is caused by, under, or based on an order of deportation. Instead, the Legalization Appeals Unit ("LAU"), in issuing its decisions, cites to INS regulation 8 C.F.R. § 243.5 (1991). *See, e.g.,* Plaintiffs' Exhibit 100, "LAU Decision of March 31, 1988." Section 243.5, titled "Self-deportation," states that:

Any alien who has departed from the United States while an order of deportation is outstanding shall be considered to have been deported in pursuance of law ....

This regulation, promulgated in 1964, defines self-deportation as used in 8 U.S.C. § 1101(g) (1970). Section 1101(g), in existence since 1952, provides that:

For the purposes of this chapter any alien ordered deported (whether before or after the enactment of this chapter) who has left the United States, shall be considered to have been deported in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed.

Thus, argue plaintiffs, INS denials are premised on language that predates, but is *not* contained, in IRCA. Instead of borrowing the language of section 1101(g), Congress expressly chose a narrower definition in IRCA section 1255a(g)(2)(B)(i). The latter section requires some showing of causation while the former does not. Plaintiffs argue that:

[U]nder the INS' policy and procedures an absence *not* caused by deportation is presumed to be an absence *caused by* deportation. Such an interpretation is simply inconsistent with the clear language chosen by Congress. The effect of such policies and procedures is that brief departures from the United States may be used to deny legalization.

Plaintiffs' Memorandum, at 22 (emphasis in original).

Plaintiffs provide an example of a brief departure from the United States that was used to deny legalization. In 1982, the INS entered an order of deportation against John M., one of the named plaintiffs. The order of deportation was never executed, nor did John M. receive notice of its entry. Several years later, John M. went to Mexico for about three weeks to visit his ailing mother. His departure was causally and temporally *unrelated* to the 1981 deportation proceedings: His absence was not caused by, under, or based on the unexecuted order of deportation. Nevertheless, his application for legalization was denied as a result of this brief departure. His wife, who remained in the United States while he went to Mexico, has been granted legalization. *See* Plaintiffs' Memorandum, at 16–17.

Plaintiffs contend that the challenged INS interpretation, regulation, policies, and procedures are invalid because they violate

the letter and spirit of IRCA as well as the due process and equal protection clauses of the Constitution.

### 2. Defendants' arguments

Defendants note that plaintiffs are aliens who were deported by the government or who "self-deported" during the IRCA qualifying period. Defendants allege, *and plaintiffs agree*, that aliens who self-deport are considered deported under the plain language of 8 U.S.C. § 1101(g) and 8 C.F.R. § 243.5. Pre–IRCA case law so holds. *Mrvica v. Esperdy*, 376 U.S. 560, 563, 84 S.Ct. 833, 11 L.Ed.2d 911 (1964); *Thorsteinsson v. INS*, 724 F.2d 1365, 1367 (9th Cir.1984). Thus, argue defendants, an alien who self-deports is an alien whose absence is caused by a deportation. Defendants believe that plaintiffs can offer no evidence that Congress, by enacting IRCA, meant to override this pre-IRCA statutory language and case law.

Next, defendants allege that the heading "[a]bsences caused by deportation" introducing section 1255a(g)(2)(B)(i) "is not intended to, and indeed cannot, negate the express language of the statutory text." Defendants argue that the heading should harmonize, rather than conflict, with the statute. Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Cross–Motion for Summary Judgment, at 9–11 ("Defendants' Memorandum").

In essence, defendants believe that they, not plaintiffs, have construed 8 U.S.C. § 1255a(g)(2)(B)(i) "consistently with that statute's wording—and with pre-existing, binding decisional authority." Defendants' Memorandum, at 12.

### 3. Statutory Analysis

The Court's analysis begins with the "cardinal principle that ... [a federal court should] ... first ascertain whether a construction of the statute is fairly possible by which the constitutional question may be avoided." *Lorillard v. Pons*, 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978), quoting *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 297, 76 L.Ed. 598 (1932);

*United States v. Watt*, 910 F.2d 587, 592 (9th Cir.1990). Here, the Court must determine whether the challenged INS interpretation, regulation, policies, and procedures are invalid because they violate IRCA. This statutory inquiry is two-pronged.

#### a. *plain language*

As with every case involving the construction of a statute, "our starting point must be the language employed by Congress." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979). Without question:

> [D]eference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill, generally requires us to assume that 'the legislative purpose is expressed by the ordinary meaning of the words used.'

*United States v. Locke*, 471 U.S. 84, 95, 105 S.Ct. 1785, 1792–93, 85 L.Ed.2d 64 (1985), quoting *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962).

Further, although the title of a statute cannot enlarge or confer powers or control its words, "the title may be helpful in interpreting ambiguities within the context of the Act." Thus, a title may demonstrate the intent of the statute. *Russ v. Wilkins*, 624 F.2d 914, 922 (9th Cir.1980). Here, the Court may properly look to the heading "[a]bsences caused by deportation" in its search for statutory meaning.

For the following reasons, the Court holds that the INS, with its statutory interpretation, regulation, policies, and procedures, violates the plain language of IRCA.

The plain language of section 1255a(g)(2)(B)(i) indicates that an alien shall not be considered to have resided continuously in the United States if "the alien was outside the United States *as a result of a departure under an order of deportation* ..." (emphasis added). While defendants direct the Court to the meaning of the term "deportation," plaintiffs argue that the entire phrase must be construed. If the entire phrase is viewed together with the

heading of the section ("[a]bsences *caused by* deportation"), plaintiffs' contention comes into focus. The Court agrees with plaintiffs that the section's plain language indicates that some showing of causation is required.

The Court also agrees with plaintiffs that the applicable regulation, 8 C.F.R. § 245a.1(c)(1)(iii), substitutes broader, more vague language than that contained in the governing statute. The regulation speaks of a departure that "was not *based on* an order of deportation." This language, however, fails to define the type of causation required.

Not only does this regulatory language fail to define the necessary causation, but the INS seemingly *ignores* both the statutory *and* regulatory language when it relies on the older regulation, 8 C.F.R. § 243.5. Because of this, plaintiffs argue that the INS:

Sets up a straw man to attack rather than addressing plaintiffs' arguments directly. Instead of focusing on whether IRCA requires INS to consider whether a departure was 'caused by' an order of deportation, INS chooses to argue an issue which plaintiffs do not here contest, i.e., whether a 'self-deportation' is a 'deportation.' That issue is irrelevant to determining Congressional intent because that is not the language Congress chose when it adopted the amnesty provisions of [IRCA]. . . .

Plaintiffs' Reply Memorandum in Support of Motion for Partial Summary Judgment and Memorandum of Response to Cross–Motion for Summary Judgment (Plaintiffs' Reply), at 7.

Clearly, by ignoring the statute and its own regulatory language adopted thereunder, the INS violates the plain letter of IRCA.

### b. *congressional intent*

After reviewing the statute's plain language, the Court should seek to determine the congressional intent behind IRCA. For the following reasons, the Court holds that the INS violates the congressional intent behind IRCA. In *McNary*, the Court noted that:

On the other hand, in recognition that a large segment of the shadow population [of undocumented aliens] played a useful and constructive role in the American economy, but continued to reside in perpetual fear, the Reform Act established two broad amnesty programs to allow existing undocumented aliens to emerge from the shadows. The first amnesty program permitted any alien who had resided in the United States continuously and unlawfully since January 1, 1982, to qualify for an adjustment of his or her status to that of a lawful permanent resident. *See* 100 Stat. 3394, as amended, 8 U.S.C. § 1255a.

*McNary*, 111 S.Ct. at 891.

The Court then cited the following legislative history:

The [House] Committee believes that the solution lies in legalizing the statuts [sic] of aliens who have been present in the United States for several years, recognizing that past failures to enforces [sic] the immigration laws have allowed them to enter and to settle here. This step would enable INS to target its enforcement efforts on new flows of undocumented aliens and, in conjunction with the proposed employer sanctions programs, help stem the flow of undocumented people to the United States. It would allow qualified aliens to contribute openly to society and it would help to prevent the exploitation of this vulnerable population in the work place.

*Id.* at 891 n. 4, quoting H.R.Rep. No. 99–682, pt. 1, at 49, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5649, 5653.

In 1988, a California district court held that:

The legislative history of IRCA reflects a congressional intent that the amnesty provisions be broadly applied, not construed in the narrowest manner consistent with the literal language of the statute.

*Gutierrez v. Ilchert*, 682 F.Supp. 467, 473 (N.D.Cal.1988).

The intent of Congress is clear: Undocumented aliens need and deserve certain

measures of protection and the INS must use its powers to legalize those persons whenever possible. It is hornbook law that an administrative agency may not act contrary to the "provisions of the law or the clear legislative intendment. . . ." 73 C.J.S. *Public Administrative Law and Procedure* § 58 (1983).

Here, by failing to heed the language of IRCA and its own IRCA regulation of 8 C.F.R. § 245a.1(c)(1)(iii), the INS clearly deviates from the intent of Congress. As such, the INS has implemented the legalization program in a manner that is inconsistent with IRCA.[1]

The Court believes that the two-pronged statutory analysis fully supports the granting of plaintiffs' Motion for Partial Summary Judgment. The Court, therefore, will not address the alleged due process and equal protection violations of the INS.

### 4. Orders of exclusion

 Plaintiffs claim that the INS violates IRCA by denying legalization applications on the basis of an "order of exclusion" entered after January 1, 1982. According to plaintiffs, the INS interprets 8 U.S.C. § 1255a(g)(2)(B)(i) to deny legalization to individuals who were *excluded from entry* into the United States.

Certain aliens outside the United States who seek admission into the country may be *excluded* pursuant to 8 U.S.C. § 1182 (1970 & Supp.1991). Section 1182 lists numerous security-related reasons for exclusion. An alien who departs from the country under an order of exclusion is one whose entry has been blocked.[2]

Technically, when an alien living unlawfully in the United States departs for any period, that alien becomes *excludable* upon reentry. Despite this, argue plaintiffs, Congress realized that these aliens maintained residency in the country and should be granted legalized status.

The finding of excludability is no more than a finding that an alien is not permitted to enter the country. An alien who departs under an order of exclusion is one whose *entry* into the country has been blocked. Plaintiffs believe that such persons cannot be "outside the United States as a result of a departure under an order of deportation" because, legally, they were never permitted *into* the country. Thus, said alien is not disqualified from legalization.

The INS practice of denying legalization status to those who were turned away is, according to plaintiffs, another example of its failure to determine whether a departure was caused by, under, or based on an order of deportation.

Initially, defendants argued that plaintiffs cannot identify a class member who has suffered this fate and, therefore, may not raise the claim. In response, plaintiffs identify several aliens who were denied legalization after having been excluded. In light of plaintiffs' response, defendants address the merits of the claim.

In essence, defendants argue that an alien who is excluded is also deported. They cite statutory sections that use the terms "deported" and "deportation" in the context of aliens found to be excludable.

It is no mystery why the terms "deported" and "deportation" are used. These words are used whenever an alien is re-

---

**1.** *Brief and casual trips abroad*

The parties raise certain other statutory and regulatory sections in support of their "continuous unlawful residence" arguments. Clearly, these provisions strengthen plaintiffs' case.

Under 8 U.S.C. § 1255a(g)(2)(A) (Supp.1991), the Attorney General must take into account any "brief and casual trips abroad" when determining whether an alien has resided continuously in the United States. In 8 C.F.R. § 245a.1(h) (1991), the INS defines "brief and casual absences" (as used in the similar statutory section of 8 U.S.C. § 1255a(b)(3)(A) (Supp. 1991)) to be "temporary trips abroad as long as

the alien establishes a continuing intention to adjust to lawful permanent resident status."

In this case, for example, the trip taken by plaintiff John M. was "brief and casual." Clearly, he evidenced a "continuing intention to adjust to lawful permanent resident status."

**2.** An alien in "exclusion proceedings" is legally considered to remain outside the United States while his or her right to enter is being determined. Thus, even if "paroled" into the country, the alien is not considered to be in the United States. 8 U.S.C. § 1182(d)(5)(A) (1970 & Supp.1991).

moved from the country. However, the Court agrees with plaintiffs that the use of these terms does not obviate the obligation of the INS to determine the *cause* of an alien's departure.

### G. *Waiver Claims*

 Under the INA, there are two separate waivers available to applicants for legalization to obtain forgiveness of a prior deportation that would otherwise disqualify them for legalization. They are: (1) the waiver provisions of 8 U.S.C. § 1182(a)(6)(B) (Supp.1991), implemented by 8 C.F.R. § 212 (1991) ("I–212 waiver"); and (2) the waiver provisions of 8 U.S.C. § 1255a(d)(2)(B)(i) (Supp.1991) ("IRCA waiver").

#### 1. I–212 waiver

8 U.S.C. § 1182(a)(6)(B) provides that an alien is not admissible to the United States if he or she has been deported within the preceding five years. Aliens who previously have been deported can have the deportation ameliorated through an I–212 waiver. An I–212 waiver can be used, for example, when an individual seeks an adjustment of status under 8 U.S.C. § 1255 (1970 & Supp.1991) and becomes a permanent resident.

However, even though the I–212 waivers can be used by applicants under section *1255*, and the adjustment of status provisions of section *1255a* are analogous to those of section *1255*, the INS routinely rules that I–212 waivers are not available for section *1255a* applicants.

Essentially, the INS feels that even if an I–212 waiver cures a prior deportation as a ground of excludability, the waiver is not effective to cure a break in continuous residence caused by a prior deportation. It believes that I–212 waivers do not apply to the legalization program.

The INS argues that 8 C.F.R. § 212.2 was promulgated to assist aliens who seek lawful permanent resident status, as provided in 8 U.S.C. § 1255. The INS promulgated section 212.2 "long before the IRCA and its legalization provisions were enacted, in order to implement an entirely differ-

ent law. The regulation thus has no applicability to legalization applicants." Defendants' Memorandum, at 13–14.

Further, defendants argue that an agency's interpretation of its own regulation is entitled to great deference. The Court, they argue, should not substitute its own judgment for that of the INS.

#### 2. IRCA waiver

The IRCA waiver is found at 8 U.S.C. § 1255a(d)(2)(B)(i). Section 1255a(d)(2)(B)(i) provides that:

[T]he Attorney General may waive any other provision of section 1182(a) of this title in the case of individual aliens for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest.

The INS maintains that an IRCA waiver eliminates a deportation as a ground of *exclusion*, but that a deportation still exists to break an alien's continuous residence. Defendants remind the Court that section 1255a(d)(2) is titled "[w]aiver of grounds for exclusion."

#### 3. Analysis

The Court, in essence, has already decided the waiver issue. In its July 20, 1990 Order, the Court addressed the waiver provisions. There, the Court held that:

If defendants' interpretation is accepted, there appears to be no purpose to the [IRCA] waiver.... If the waiver of a post–1981 deportation does not result in a finding of continuous residence, then the statute would not apply to the alien. If the statute does not apply to the alien, then the waiver lacks meaning. If the IRCA [waiver] does not apply to the alien, then the INA [waiver] does, and he already had a procedure available to apply for a waiver of admissibility.

July 20, 1990 Order, at 9–10.

The Court believes that Congress intended the availability of the waiver provisions for legalization applicants such that a departure would not automatically break the applicants' continuous unlawful residence. Because plaintiffs seek amnesty under

IRCA, the Court believes that of the two waivers, the IRCA waiver should be applied to plaintiff class.

## CONCLUSION

For all of the above reasons, IT IS ORDERED that plaintiffs' November 14, 1990 Motion for Partial Summary Judgment is GRANTED. Defendants' May 17, 1991 Cross–Motion for Summary Judgment is DENIED.

Plaintiffs are directed to submit a proposed form of Judgment within fifteen (15) days of the date of this Order. The form of Judgment should indicate the specific relief sought by plaintiffs. Plaintiffs are also directed to inform the Court, in writing, of the status of the eighth claim for relief within fifteen (15) days of the date of this Order.

## JUDGMENT

This Court, acting on the motion for summary judgment submitted by the plaintiffs, having reviewed all of the memoranda and pleadings submitted, and being fully advised,

HEREBY ORDERS AND ADJUDGES as follows:

1. This Court hereby declares that the regulations, policies and procedures of the Immigration and Naturalization Service (INS) implementing 8 U.S.C. § 1255a(g)(2)(B), are unlawful and violate the Immigration Reform and Control Act, and such regulations, policies and procedures are hereby declared to be invalid. Judgment is entered in favor of the plaintiffs as to Counts 1 through 7.

2. The INS is hereby prohibited from denying legalization to applicants on the basis of a departure following the entry of an order of deportation, except under the following circumstances:

(a) The INS shall not deny legalization to any applicant on the basis of 8 U.S.C. § 1255a(g)(2)(B) (interruption in continuous residence caused by a deportation after January 1, 1982) if the applicant establishes that giving effect to the order of deporta-

tion would result in a gross miscarriage of justice.

(b) The INS shall not deny legalization to any applicant on the basis of an alleged deportation after January 1, 1982 unless the INS first makes the following findings:

(1) a valid final order of deportation has been entered against the applicant;

(2) the applicant was served pursuant to INS regulations with notice of the order of deportation, and the applicant departed from the United States after such service was effected; and

(3) the applicant's departure from the United States was caused by the order of deportation.

An applicant's departure from the United States shall not be deemed to have been caused by the order of deportation merely because the departure occurred after the order of deportation was entered. Instead, there must be a finding that the applicant would not have departed from the United States but for the order of deportation.

(c) The INS shall not deny legalization to any applicant on the basis of an alleged deportation after January 1, 1982 if the applicant departed from the United States under an order of exclusion.

(d) The INS shall not deny legalization to any applicant on the basis of an alleged deportation after January 1, 1982 unless the INS first affords the applicant an opportunity to file a waiver pursuant to 8 U.S.C. § 1255a(d). If the waiver is approved, then the applicant shall not be denied legalization on the basis of the alleged deportation.

3. Effective immediately, prior to denying any pending application for legalization on the basis of 8 U.S.C. § 1255a(g)(2)(B), the Immigration Service shall notify the applicant of his or her rights under parts (a)–(d) of paragraph 2, and afford the applicant an opportunity to submit any additional supporting documents that may be relevant, and an opportunity to submit a request for a waiver. If the applicant desires to review his or her prior deportation file and makes a request for such file, s/he shall be provided a copy of the entire de-

portation file prior to the time that a decision is made.

4. The INS shall, within sixty (60) days of the date of this order, send notice to all legalization applicants (and to the applicant's attorney, qualified designated entity, or representative, if any) whose applications were denied on the basis of 8 U.S.C. § 1255a(g)(2)(B). The notice shall inform the applicant of the decision of this court; inform the applicant that his/her legalization application will be reopened and readjudicated; inform the applicant that he/she will be granted a work authorization and a stay of deportation; inform the applicant that s/he can apply for and obtain an employment authorization card (INS Form I-688A) (or, if the applicant has an expired I-688A card, apply for and obtain an extension of such card) from the local legalization office in the same manner as any other legalization applicant whose application is pending; notify the applicant of the importance of and the procedure for keeping INS advised of address changes; and provide the names, addresses and telephone numbers of counsel for plaintiffs.

5. The INS shall reopen and readjudicate all legalization applications previously denied on the basis of 8 U.S.C. § 1255a(g)(2)(B). Prior to such readjudication, the INS shall send notice to the legalization applicant as provided under paragraph 4. The readjudication shall not occur until the applicant has been served with such notice by personal service or by certified mail, return receipt requested, and has had an opportunity to respond. If service is not effected, the application will be held in abeyance and no final decision will be made until service on the applicant is effected. The legalization applications shall be readjudicated in accordance with the provisions in paragraph 2 above.

6. Effective immediately, INS shall grant a stay of deportation and work authorization to all legalization applicants whose applications have been denied on the basis of 8 U.S.C. § 1255a(g)(2)(B). This stay of deportation and work authorization shall be valid until the INS reopens the applicant's legalization application and makes a final decision in accordance with paragraph 5.

7. Within ten (10) days of the date of this order, the INS shall provide notice of this court's decision to all INS field officers, border patrol officers, enforcement officers, and deportation officers. In particular, these INS employees shall be informed that legalization applicants whose applications were denied on the basis of 8 U.S.C. § 1255a(g)(2)(B) have the right to an immediate stay of deportation; that these individuals shall be released from custody (unless they are deportable on other grounds, i.e. because of criminal convictions); and that these individuals shall not be deported until their legalization applications have been reopened and a final decision has been made. If any class member is arrested, encountered in detention, or is held under an INS detainer, the class member shall be given a copy of the notice described in paragraph 4 and shall be released from custody (unless they are deportable on other grounds, i.e. because of criminal convictions).

8. In order to allow the plaintiffs to monitor the compliance of the Immigration Service with this Court's order, the Immigration Service shall provide counsel for plaintiffs with copies of all legalization wires and memoranda implementing this order. The Immigration Service shall also provide monthly reports to the counsel for plaintiffs which include the following information: (1) the number of notices sent to class members pursuant to paragraph 4; (2) the number of applications reopened during the preceding month pursuant to paragraph 5; (3) the total number of applications adjudicated during the month, and for each such application the action taken—i.e., whether the application was approved, denied, or remanded; (4) and the number of detained class members encountered by INS enforcement officers, and for each such class member the action taken—i.e. whether released from custody or held in detention. The counsel for the plaintiffs shall have the right to review the decisions issued by the Immigration Service adjudicating legalization applicants on the basis of section 1255a(g)(2)(B).

9. Except as otherwise provided in the foregoing paragraphs, Count 8 of the Plaintiffs' Complaint is dismissed.

10. The Court shall retain jurisdiction to insure compliance with its orders, and to consider the issue of whether the class definition may be amended and a nationwide class of plaintiffs certified.