

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-7-2003

# USA v. Munoz-Valencia

Precedential or Non-Precedential: Non-Precedential

Docket 01-3976

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Munoz-Valencia" (2003). *2003 Decisions*. Paper 754.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/754

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 01-3976

———

UNITED STATES OF AMERICA

v.

GUILLERMO MUNOZ-VALENCIA,
                                                    Appellant

———

On Appeal from the District Court of the Virgin Islands
Division of St. Thomas and St. John
D.C. Criminal No. 01-cr-00108
(Honorable Thomas K. Moore)

———

Argued November 8, 2002

Before:  SCIRICA, ALITO and RENDELL, Circuit Judges

(Filed: March 7, 2003)

DOUGLAS J. BEEVERS, ESQUIRE (ARGUED)
Office of Federal Public Defender
P.O. Box 1327, 51B Kongens Gade
Charlotte Amalie, St. Thomas
U.S. Virgin Islands 00804-1327

        Attorney for Appellant


BRUCE Z. MARSHACK, ESQUIRE (ARGUED)

Office of United States Attorney
1108 King Street, Suite 201
Christiansted, St. Croix
U.S. Virgin Islands 00820-4951

ANTHONY J. JENKINS, ESQUIRE
Office of United States Attorney
Federal Building & United States Courthouse
5500 Veterans Drive, Suite 260
Charlotte Amalie, St. Thomas
U.S. Virgin Islands 00802-6424

       Attorneys for Appellee

--------

## OPINION OF THE COURT

--------

SCIRICA, <u>Circuit</u> <u>Judge</u>.

The principle issue in this sentencing guideline appeal is whether a United States Sentencing Guideline § 2L2.2(b)(1) enhancement for being a previously deported illegal alien applies to an alien who left the United States under voluntary departure. Also at issue is the denial of credit for accepting responsibility under U.S.S.G. § 3E1.1(a). We will affirm.[1]

--------

[1]At the direction of this Court, the parties advised whether Munoz-Valencia's claims are moot in light of the fact that, although he did not complete his three year supervisory release term, Munoz-Valencia served twelve months in jail and seemed to have returned to Columbia. Nonetheless, Munoz-Valencia faces collateral consequences from his conviction which bars mootness. In <u>Steele v. Blackman</u>, 236 F.3d 130 (3d Cir. 2001), we held an erroneous conviction of an aggravated felony has continuing and serious legal consequences, including a permanent bar to entry into the United States. Thus, in an appeal where, if successful, appellant's status will change from an aggravated felon to a non-

(continued...)

## I.

Guillermo Munoz-Valencia is a Columbian citizen who was arrested on December 14, 2000 while attempting to board an airplane traveling from St. Thomas, Virgin Islands to New York. Munoz-Valencia's arrest occurred after authorities discovered he was carrying $90,000 of undeclared currency and using a false resident alien identification card. Upon his arrest, Munoz-Valencia admitted he was an illegal alien and previously used the false identification card to enter the United States through Texas in July 2000. Munoz-Valencia pled guilty to violating 18 U.S.C. § 1546(a) for fraud and misuse of documents.

A presentence report revealed Munoz-Valencia was previously ordered deported on October 25, 1998. The immigration court issued a superseding order of voluntary departure, and Munoz-Valencia complied by returning to Columbia on November 17, 1998. On this basis, the presentence report recommended a two level enhancement under U.S.S.G. § 2L2.2(b)(1) because Munoz-Valencia was "an unlawful alien who ha[d] been deported (voluntarily or involuntarily) on one or more occasions prior to the instant offense." U.S.S.G. § 2L2.1(b)(1). Munoz-Valencia did not object to the two level enhancement at the sentencing hearing.

---

[1](...continued)
aggravated felon, collateral consequences prevent the issue from being moot. See id. In this case, Munoz-Valencia is an aggravated felon as convicted. If successful on appeal he would be re-sentenced to a non-aggravated felony conviction. Thus, the issues before us are not moot.

The District Court adopted the recommendation of the presentence report and imposed a two level enhancement for a prior deportation under U.S.S.G. § 2L2.2(b)(1). The court also found that Munoz-Valencia had not accepted responsibility for the offense under U.S.S.G. § 3E1.1(a). As a result, Munoz-Valencia was sentenced to twelve months of imprisonment and three years of supervised release. Munoz-Valencia filed a motion to correct his sentence under Fed. R. Crim. P. 35(c), which was denied. This appeal followed.[2]

**II.**

Generally, we exercise plenary review over the interpretation of sentencing guidelines. United States v. McKenzie, 193 F.3d 740, 742 (3d Cir. 1999). But where an appellant does not object, we review for plain error. United States v. Cefaratti, 221 F.3d 502, 512 (3d Cir. 2000). Because Munoz-Valencia did not object to application of U.S.S.G. § 2L2.2(b)(1), we review for plain error.[3]

---

[2]We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The District Court exercised jurisdiction under 18 U.S.C. § 3231 and 48 U.S.C. § 1612.

[3]Munoz-Valencia argues that he called attention to the issue of proper application of U.S.S.G. § 2L2.2(b)(1) during the sentencing hearing on August 15, 2001 through his lawyer's statement: "We have also . . . noticed possible arguments that . . . I've waived, possibly, the enhancement for a deportation. This defendant was voluntarily deported. I'm not, I couldn't find authority either way whether or not it should apply or not, but I'm too late on that. I can't raise it." This "objection" is insufficient for plenary review. Munoz-Valencia also argues that his Rule 35(c) motion for correction of sentence filed October 10, 2001 was a sufficient objection for plenary review. We disagree. See Jones v. United States, 527 U.S. 373, 388 (1999) (stating that a request for a jury instruction prior to the jury retiring does not preserve an objection to the instruction actually given because, to hold otherwise, "district judges would have to speculate on what sorts of objections might

(continued...)

4

The defendant bears the burden of showing plain error. United States v. Olano, 507

U.S. 725, 734 (1993). "For there to be plain error, there must be an 'error' that is 'plain'

and that 'affects substantial rights.' A deviation from a legal rule is 'error.' A 'plain' error

is one which is 'clear' or 'obvious.'" United States v. Jake, 281 F.3d 123, 132 (3d Cir.

2002) (quoting United States v. Russell, 134 F.3d 171, 180 (3d Cir. 1998)). Munoz-

Valencia argues the District Court erred when it ordered a two level enhancement because §

2L2.2(b)(1) does not apply to aliens who have left the United States under a grant of

voluntary departure.[4] We will affirm.

United States Sentencing Guideline § 2L2.2(a) establishes a base offense level of

eight for persons found guilty of violating 18 U.S.C. § 1546, which proscribes, among

other things, the fraudulent misuse of documents authorizing entry into or stay within the

United States. Under U.S.S.G. § 2L2.2(b)(1), a two level enhancement applies "[i]f the

defendant is an unlawful alien who has been deported (voluntarily or involuntarily) on one

or more occasions prior to the instant offense." The sentencing guidelines do not define

the phrase "deported (voluntarily or involuntarily)." But we can decipher its definition by

giving its words their plain, natural, and commonly understood meaning. See Hartford

---

[3](...continued)
be implemented through a request for an instruction and issue rulings on 'implied' objections that a defendant never intends to raise. Such a rule would contradict Rule 30's mandate that a party state distinctly his grounds for objection . . . our decisions instead have held that an appellate court may conduct a limited review for plain error.").

[4]Absent the two level enhancement, Munoz-Valencia's guideline offense level would have been eight, meaning he would have received a sentence of no more than six months imprisonment.

Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 8 (2000);  United States v. Romo-Romo, 246 F.3d 1272, 1275 (9th Cir. 2001).

An alien may depart the United States at his own expense if the Attorney General so permits after an immigration judge has entered an order granting voluntary departure in lieu of removal and has found that the alien:

> [H]as been physically present in the United States for a period of at least one year immediately preceding the date the notice to appear was served . . . is, and has been, a person of good moral character for at least 5 years immediately preceding the alien's application for voluntary departure . . . is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4) of this title . . . [and] has established by clear and convincing evidence that the alien has the means to depart the United States and intends to do so.

8 U.S.C. § 1229c(b)(1).

An alien who departs this country under a formal deportation order is excludable from the country for five years, 8 U.S.C. § 1182, and commits a felony if he or she returns without permission.  8 U.S.C. § 1326; see Cunanan v. I.N.S., 856 F.2d 1373, 1374 n.1 (9th Cir. 1988); 1 Bill Ong Hing, Handling Immigration Cases 394 (2d ed. 1995).  A grant of voluntary departure, on the other hand, is a form of discretionary relief which allows a deportable alien to leave the United States without suffering these consequences.  Cunanan, 856 F.2d at 1374 n.1.  In other words, an alien who voluntarily departs the United States may apply for immediate re-entry.[5]  But a grant of voluntary departure does not exclude a

---

[5]Richard A. Boswell, Immigration and Nationality Law 619 (3d ed. 2000) ("Voluntary departure assures that the person who leaves the country (notwithstanding the fact that she has been found to be deportable by an immigration judge) may return to the United States,

(continued...)

6

deportable alien from all consequences of illegal entry or stay within this country. <u>See</u>

<u>Mrvica v. Esperdy</u>, 376 U.S. 560 (1964). Thus, in some situations, a deportable alien's

voluntary departure may be treated as a deportation. Id.

In <u>Mrvica</u>, a petitioner was under a deportation order when he departed the United

States aboard a ship that sailed to Chile in 1942. <u>Id.</u> The ship returned to the United States

shortly thereafter, where petitioner remained. <u>Id.</u> New deportation proceedings

commenced and petitioner was again found subject to deportation but was granted the

privilege of voluntary departure in a final order in 1954. <u>Id.</u> at 561. In 1959, following

other proceedings, petitioner was ordered deported to Yugoslavia. <u>Id.</u> at 562. His

application for status of a permanent resident under § 249 of the Immigration and

Nationality Act was denied on the ground that he departed the United States in 1942. <u>Id.</u>

---

[5](...continued)
if admissible, without having to seek the special permission of the Attorney General that is required of persons returning within five years of their removal."); Jacqueline P. Ulin, <u>A Common Sense Reconstruction of the INA's Crime-Related Removal System: Eliminating the Caveats From the Statue of Liberty's Welcoming Words,</u> 78 Wash. U. L. Q. 1549, 1565-66 (2000) ("Voluntary departure represents another example of discretionary relief outlined in the INA. Its scope is more limited than the other INA relief provisions. Under this type of relief, an alien who departs 'voluntarily' does so by leaving the United States before the INS issues a formal removal order against him . . . . By engaging in a voluntary departure, an alien can leave before the INS issues a removal order against him and thus circumvents the 'ineligible to return' period.); Peter H. Schuck & John Williams, <u>Removing Criminal Aliens: The Pitfalls and Promises of Federalism,</u> 22 Harv. J.L. & Pub. Pol'y 367, 395 (1999) ("Because aliens who are not formally removed are eligible to apply for re-entry immediately, voluntary departure was and remains perhaps the most sought-after form of relief. The INS routinely uses it to encourage aliens not to contest removal.").

Petitioner conceded he was ordered deported in 1942 and that his departure from

the United States to Chile executed the order of deportation. Id. at 563. The Supreme

Court said:

> There can be no doubt that this . . . point is correct. Legislation then
> applicable provided that ". . . any alien ordered deported . . . who has left the
> United States shall be considered to have been deported in pursuance of law,
> irrespective of the source from which the expenses of his transportation
> were defrayed or of the place to which he departed."

Id. (citing Act of March 4, 1929, § 1(b), 45 Stat. 1551, 8 U.S.C. (1940 ed.) § 180 (b)).[6]

The Court continued:

> Any possible doubt of the import of this provision is removed by [legislative
> history] which explained . . . the Department of Labor has, in many cases,
> after a warrant of deportation has been issued, refrained from executing the
> warrant and deporting the alien, at the expense of the appropriation, to the
> country to which he might be deported, upon the condition that the alien
> voluntarily, at his own expense, leave the United States. Some doubt exists
> whether an alien so departing has been "deported." Subsection (b) of section
> 3 of the bill [the provision quoted above] therefore removes any possible
> doubt on this question by providing that in such cases the alien shall be
> considered to have been deported in pursuance of law.

Id. at 564.

The alien in Mrvica was under a deportation order when he left the United States.

376 U.S. at 561. But the Court made clear that a voluntary departure from the United States

may be treated as a deportation. Id. at 563-64; see also United States v. Taofig Olabiyi

Blaize, 959 F.2d 850, 851 (9th Cir. 1992) ("This case presents a single straightforward

issue: If a person who is under a deportation order for which he has appealed voluntarily

---

[6]Section 180 was replaced by 8 U.S.C. § 1101(g), which retains identical language.

leaves the United States, has he been deported? We answer this question 'yes' based on statutes, regulations, and case authority."). Here, as in <u>Mrvica</u>, an order of deportation had previously been entered against the petitioner, and there is no error, let alone plain error, in applying the U.S.S.G. § 2L2.2(b)(1) two level enhancement to an unlawful alien who has been granted voluntary departure.

## III.

Munoz-Valencia contends he "accepted responsibility," under U.S.S.G. § 3E1.1(a), which permits a reduction "if the defendant clearly demonstrates acceptance of responsibility for his offense." Whether a defendant has "accepted responsibility" requires a factual determination that we review for clear error. <u>United States v. DeLeon-Rodriguez</u>, 70 F.3d 764, 767 (3d Cir. 1995). "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1 app. 5 (2002).

A defendant must prove by a preponderance of the evidence that a reduction is warranted under this provision. <u>DeLeon-Rodriguez</u>, 70 F.3d at 767. At the time of his arrest, Munoz-Valencia admitted possessing the false resident alien card for six months and

using it to enter the United States illegally.[7]  He points to no other evidence in support of his claim that he sufficiently accepted responsibility to warrant a departure.

The District Court found Munoz-Valencia's admission of possessing and using the false resident alien card insufficient to constitute acceptance of responsibility.  Because Munoz-Valencia was found carrying $90,000 in undeclared currency, the District Court concluded he was "involved in something else, because [he] did not make any attempt to declare that currency."  Thus, the District Court did not "believe that [he] ha[d] accepted appropriate responsibility, and that [his] explanation was truthful."  We see no clear error.

## IV.

For these reasons, we will affirm the judgment of conviction and sentence.

---

[7]Munoz-Valencia provided the following statement in the presentence report:

> In Juarez, Mexico I got papers from a friend.  I was in Mexico illegally and I needed to get to the U.S.  I was looking for the American dream.  I came to St. Thomas on vacation and was about to return to New York.  I knew the papers were false, but I needed them to pass at the airports.  I am very sorry for what happened, but all I wanted to do in the U.S. is work.  I was hoping to get my papers legally.

TO THE CLERK:

        Please file the foregoing opinion.

                /s/ Judge Anthony J. Scirica
                           Circuit Judge

DATED: March 7, 2003